THE PULLMAN COMPANY v. HENRY CAVINESS.

Decided February 3, 1909.

1.—Negligence—Definition.

Negligence, constituting a cause of action, is such an omission by a responsible person to use that degree of care, diligence and skill which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damages to the latter.

2.—Same—Master and Servant—Abnormal Danger—Warning.

Where there is any abnormal danger to the servant in the use of a substance furnished by the master, and such danger is known to the master and unknown to the servant, it is the duty of the former to warn the latter of the danger to which he is exposed. But the failure to warn must be the proximate cause of injury to the servant in order to constitute it actionable negligence.

3.—Same—Use of Explosives.

Where an employe of a sleeping car company was engaged in applying bedbug poison to a berth in a car and, in turning the spring, caused a match in the berth to ignite which caused the poison to become ignited and explode to the servant's injury, and it was undisputed that the company did not know that there was any unusual or abnormal risk in applying the poison as it directed and required of the servant, actionable negligence could not be predicated upon the failure to warn the servant that he would be exposed to the danger of the ignition and explosion.

4.—Same.

The company could not reasonably anticipate that a match or other ignitable substance would be in the berth, and that the servant in turning back the spring would ignite the match, and that fire from it would be communicated to the poison and cause the explosion and injury.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Guinn & McNeill,* for appellant.

*Bertrand & Arnold* and *Ernest Fellbaum,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for personal injuries alleged to

have been inflicted upon him by the company's negligence. The allegations in plaintiff's petition are substantially: That on February 14, 1908, while in the employ of defendant, it became necessary for him in the discharge of the duties of his employment to apply bedbug poison furnished by defendant to a berth in one of its sleeping cars, and, after the poison had been applied to the spring on one side of the berth, to turn the spring and apply it on the other side; that, in the performance of this duty, the poison was, through the negligence of defendant, ignited and exploded, and he was thereby burned and seriously and permanently injured; that the defendant was negligent in that, the bedbug poison being a highly explosive liquid, easily ignited and dangerous for use, it failed to warn him of the danger of using it, and in permitting a match or other highly inflammable substance to remain in the berth, which, while plaintiff was in the act of turning the spring in the berth, ignited and caused the poison which had been applied to explode, the plaintiff not knowing of the danger of using the poison; and that such negligence was the proximate cause of his injuries. In our view of the case, we deem it unnecessary to say more of defendant's pleadings, than that its answer contained a general denial. The case was tried by a jury and resulted in a judgment in favor of the plaintiff for $1,000.

The undisputed evidence shows that plaintiff sustained injuries while in discharge of the duties of his employment, as he alleged in his petition. The only question in the case is, Does the evidence tend to show that his injuries resulted from defendant's negligence? The undisputed evidence shows that defendant had been using the same kind of bedbug poison for the same purpose and in the same manner for a great number of years prior to the time plaintiff was injured, and that it had never ignited or exploded before; that the poison was in a liquid form, composed of turpentine, wood alcohol, and corrosive sublimate, to make a gallon of which three quarts of turpentine, one quart of wood alcohol and about three-sixteenths of a pound of the sublimate were used; and was such as is usually prepared and sold by druggists for the purpose defendant used it; that it was applied from a tin bucket by sprinkling with a feather duster; that plaintiff is twenty-six years old and had worked for defendant as a car cleaner, prior to the date of his injuries, for three years, and during the last two in cleaning the cars, applying the bedbug poison as on the occasion in question.

The plaintiff testified as to how the accident happened as follows: "The foreman's poison gave out before we were through and he asked me if I had enough poison left in my bucket to come back and finish those two sections. I told him I had enough and was putting it on, rubbing it on one side of the spring first and then raising the spring, leaning it back, in order to put the poison on, and when I snatched up the spring to lean it back the fire burst out in a big blaze, going to the top of the car at that end. . . . The berth I was poisoning at the time was an upper. I could reach it while standing on the floor, but had to get up on a step-ladder to apply the poison to the spring like it was, and I was on the step-ladder when the fire broke out. . . . I began to put the poison on and the spring was not near enough for me to put it on top, and I pulled it to me and something

popped. I didn't see what popped. No, sir, I don't know what popped, but it sounded like a match. I can't say whether it was a match or not. . . . When that thing popped and the blaze came up, I hollered; I fell off the ladder; I couldn't see where I was getting down at, and I fell off. . . . When I got down the blaze covered me."

His brother John, the only other person in the car, testified: "On the day of the accident I was raising the springs the same as Henry was. I heard something pop like a match and then I heard the explosion, and then he hollered; he hit the floor; it sounded like he had jumped, not like he had fallen. . . . I heard something pop like a match. There was no loud report made—just a flash up. I have been working for the company six years and a half. The company has been using this bedbug poison ever since I have been working for them. . . . I never heard or saw any of the stuff burning at all before this. About four years I had been in constant use of it. No, sir, I never saw or heard of any other instance of its having done that way."

It is undisputed that neither the company nor any of its agents informed or warned the plaintiff that the poison was igneous or explosive, nor does it appear that any of them knew that it was save the inference that may be drawn from the nature of its ingredients. This, however, would not show that they knew it was dangerous if properly applied in its use. And the evidence shows that plaintiff was properly instructed as to how to apply it. Under the undisputed facts and evidence recited it is contended by defendant that the court erred in refusing its request to peremptorily instruct a verdict in its favor. This involves the question, Does the evidence tend to show that plaintiff's injuries were proximately caused by negligence of the defendant as alleged? In other words, Was the defendant's failure to warn plaintiff of the danger in using the bedbug poison or in permitting a match or some other inflammable substance to remain in the berth negligence?

Negligence, constituting a cause of action, is such an omission by a reasonable person to use that degree of care, diligence and skill which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damages to the latter. It must be borne in mind that the negligence charged is not in furnishing plaintiff with an easily igneous and highly explosive and dangerous substance for use in the performance of his work; but in failing to warn him of the fact that it was, from its igneous and explosive nature, dangerous, and in permitting a match or some other inflammable substance to be in the berth where the poison was applied. The obligation of the defendant to the traveling public was to use any and every means procurable to rid its sleeping cars of bedbugs, even if it took fire to do it. Whatever instrumentality it adopted and placed in the hands of its servant to be applied to that end, it was incumbent upon him to do it with all his might, or "throw up his job." If, however, there was any abnormal danger to the plaintiff in the use of the poison, known to the defendant and unknown to him, it was the duty of the former to warn the latter of the danger to which he was exposed. But the failure to warn him must

have been the proximate cause of his injury in order to constitute it actionable negligence. In this case it is shown by the undisputed evidence that the defendant did not know that its servants were exposed to any unusual or abnormal risk in the application of the bedbug poison; for it was such as had been constantly used for many years in the same way by the company's servants, and applied by plaintiff's foreman and frequently by the plaintiff himself, without an accident or anything occurring to show that it was inherently dangerous in such use.

In view of the incontestable and undisputed evidence, it is too clear for discussion that the defendant was not guilty of negligence, proximately causing or contributing to plaintiff's injuries, in failing to inform or warn him that he would be exposed to the danger of the ignition and explosion of the poison in applying it in the manner required of him in poisoning bedbugs. (San Antonio Gas Co. v. Robertson, 93 Texas, 507; Duerler Mfg. Co. v. Dullnig, 83 S. W., 889, 87 S. W. (Sup. Ct.), 333; International & G. N. Ry. v. Reiden, 107 S. W., 661.) Nor could defendant reasonably anticipate that a match or other ignitable substance would be in the berth, and that plaintiff in turning back its springs would ignite the match, and that fire from it would be communicated to the poison, ignite it and cause the explosion, and the injury to plaintiff in consequence. Railway v. Reiden, *supra.* Hence, we conclude that the trial court erred in not peremptorily instructing a verdict for the defendant. And, as it appears from the record that the case was fully developed, and as the undisputed evidence wholly fails to show any negligence of the defendant towards the plaintiff proximately causing his injuries, the judgment of the District Court is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.