INTERNATIONAL & G. N. R. CO. v.
WALTERS.

(Court of Civil Appeals of Texas. San Antonio. Nov. 5, 1913. On Motion for Rehearing Dec. 17, 1913.)

1. APPEAL AND ERROR (§ 773*)—DISMISSAL—DELAY IN FILING BRIEFS.

The record on appeal was filed with the clerk of the Court of Civil Appeals on July 30, 1912, and the cause was set for October 8th but at appellee's request was postponed until October 15th. A typewritten copy of appellant's brief was delivered to appellee's counsel on September 25th and printed copies two days later. The brief covered only a few questions, chiefly questions of fact, and it was not alleged that appellee did not have sufficient time to brief the case after receiving the copy of appellant's brief. Held, in view of the postponement granted, that appellee's motion to dismiss the appeal for delay in filing of briefs would be denied.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3104, 3108–3110; Dec. Dig. § 773.*]

2. MASTER AND SERVANT (§ 296*)—ACTION FOR INJURIES—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In a car repairer's action for personal injuries, where it appeared that defendant's employé on the engine which struck him saw him on the track while the engine was 12 feet away a charge that, if such employé saw and realized the danger, it was his duty to use all reasonable means that a person of ordinary prudence would have used under the circumstances to prevent injury, and that, if his failure to do so was the proximate cause of the injury, plaintiff could recover, was not without support in the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

3. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURIES—QUESTION FOR JURY—DISCOVERED PERIL.

On evidence, in a car repairer's action for personal injuries, held, that it was for the jury to say whether defendant's employés, on the engine which struck plaintiff, exercised ordinary care to prevent the injury, and, if they did not, whether such care could have averted the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

4. NEGLIGENCE (§ 59*)—"PROXIMATE CAUSE."

An injury which could not have been foreseen or reasonably anticipated as the natural and probable result of a negligent act is not proximately caused by such act.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758–5769; vol. 8, p. 7771.]

5. MASTER AND SERVANT (§ 248*)—ACTION FOR INJURIES—DISCOVERED PERIL.

Where a car repairer riding cars on a side track jumped therefrom in anticipation of injury and ran in front of an engine on a parallel track, and where there was no evidence that the engineer and fireman knew that he was riding cars on the side track, nor that they could or would by ordinary care foresee that he would run in front of the engine, they could not anticipate probable injury to him until it became apparent that he was nearing the track without knowing of the engine's approach.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 801–804; Dec. Dig. § 248.*]

6. MASTER AND SERVANT (§§ 295, 296*)—ACTION FOR INJURIES—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE AND ASSUMED RISK.

When plaintiff seeks a recovery upon the issue of discovered peril as well as upon other theories, charges on contributory negligence and assumed risk should be limited to be considered only upon the other theories, as such defenses cannot be urged to defeat liability arising by reason of discovered peril.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179, 1180–1194; Dec. Dig. §§ 295, 296.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**On Motion for Rehearing.**

**7. MASTER AND SERVANT (§ 286\*)—ACTION FOR INJURIES—QUESTION FOR JURY.**

In a car repairer's action for injuries by being struck by an engine, *held,* on the evidence, that the question whether the engineer saw plaintiff on the side of the car from which he jumped and ran in front of the engine was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.\*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by Frank Walters against the International & Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Wilson, Dabney & King, of Houston, for appellant.

MOURSUND, J. Frank S. Walters filed this suit against T. J. Freeman, receiver, and afterwards, the receivership having terminated, the International & Great Northern Railway Company, the purchaser of the properties at the receiver's sale, was made a party to the suit.

Plaintiff alleged that on September 16, 1909, he was in the employ of Freeman, receiver, as an inspector and car repairer in his yards at Spring; that it was his duty to inspect cars received in said yards for defects, and the air hose connected therewith, and to repair such defects when he could and couple up the air hose, and in the discharge of his duty it often became necessary for him to hang onto the side of cars while they were in motion in said yard; that on said date a number of cars were standing on a siding, and certain employés were in charge of an engine attached to other cars which they were backing into the siding, where the others stood, for the purpose of coupling them together, and it became plaintiff's duty to inspect said cars and the air hose and to couple up the air hose, and to this end he was riding on the ladder, on the side of one of the cars attached to the engine, as was usual and customary under such circumstances; that upon the moving cars approaching the stationary ones the speed thereof was not reduced, as he expected would be done and as should have·been done, but rather increased, and it became manifest to him that the moving cars would strike the others with unusual force, and being thereby put in danger, and fearing for his safety, he jumped to the ground and undertook to cross another track running parallel with the one on which the cars were moving and eight or ten feet distant therefrom, when he was struck by the engine which had been detached from the said cars and run upon the said track, and which was being run at an unusual, dangerous, and excessive rate of speed, to wit, more than six miles an hour, in express violation of the orders and rules of defendant, and was thereby knocked down and injured, the injuries being set out in detail. He further alleged: "That the proximate cause of the injury of plaintiff, as aforesaid, was the negligence and carelessness of defendant receiver, and those of his servants and employés in charge of the said engine, in this, that they ran the said cars into the said siding to be brought in contact with the stationary ones thereon, or when they knew, or in the exercise of ordinary care would have known, that they would probably come in contact with said cars, without the engine being connected therewith so as to control their movement and make it possible for the cars to come together without undue and unnecessary force, and without endangering the safety of those of defendant's employés whose duties required them to be upon and about the said cars, and ran the said cars into the said siding with the engine detached therefrom at an excessive and unnecessary speed, in violation of the said rules and orders, well knowing, or in the exercise of ordinary care would have known, that the moving cars would thereby be caused to strike upon the stationary ones with undue and unnecessary force, which would endanger the safety of those employés whose duties required them to be upon and about the said cars; and in this, that the said employés in charge of the engine gave no warning of the movements of the said engine into and upon the said siding by ringing the bell or blowing the whistle, or in other manner, as was their duty to do, and kept no lookout ahead of the engine, as was their duty to do, and ran the engine at an unusual, dangerous, and excessive rate of speed, in violation of the orders and rules of defendant as aforesaid, and that, had they sounded the whistle and rung the bell or given other adequate warning, plaintiff would have been advised of the approach of said engine and have avoided contract therewith, or, if they had kept a reasonable lookout ahead of said engine, they would have discovered plaintiff in time to have avoided striking him by warning him of the approach of the engine, or by stopping the same, or slacking the speed thereof, or had they run the said engine at the usual and proper rate of speed, he would not have been injured; and in this, that those in charge of the said engine saw plaintiff and realized the danger of his being struck by the said engine in time to have avoided striking him, by the reasonable use of all the means at their command, both by giving warning and by stopping the said engine or slacking the speed thereof, but to use such means they wholly failed; and plaintiff says that he was in the exercise of ordinary care in leaving the said car and in undertaking to cross over the adjacent track under the at-

*\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes*

tending circumstances, and that his injury was without fault or neglect on his part."

We quote from appellant's brief its statement of defendant's pleadings, viz.: "Defendant, International & Great Northern Railway Company, replied, first, by general denial, and second, by a plea of contributory negligence on the part of the plaintiff in general terms and by a plea that plaintiff, in riding on the side of the moving cars, was not acting in furtherance of or in the discharge of any duty of the defendant but was acting in violation of the rules, whereby he assumed all dangers resulting from his said action in riding on the moving cars; that if plaintiff, in so riding, was in the discharge of his duty, then the injuries complained of by plaintiff resulted from risks and dangers which were ordinarily incident to the service in which he was engaged, and which he had assumed; that the risks and dangers in getting upon said moving cars, as well as the danger of jumping from said cars or crossing the adjoining track of defendant, were obvious and open to the plaintiff, and known to him and were assumed by him; that plaintiff's injuries were directly caused or contributed to by his own negligence in riding upon said moving cars and in alighting therefrom and in undertaking to cross the track of defendant in front of the approaching engine; that the engine which struck the plaintiff was open to the view of plaintiff, and if plaintiff had exercised his sense of sight and hearing, or undertaken to do so, could wholly have avoided being hurt; that both plaintiff and T. J. Freeman, receiver, at the time of the accident, were engaged in interstate and international commerce, and that the liability, if any, to plaintiff was governed by the laws of the United States, and that under these laws plaintiff was injured through risks and dangers, if any, which he had assumed; that the risk of riding upon said moving train, as well as the risk of jumping from same or of crossing the adjoining track of defendant, were risks which, under the law, plaintiff assumed, and for which he could not hold the defendant liable."

The trial resulted in a verdict and judgment for plaintiff for $7,500.

[1] Appellee has filed a motion to dismiss the appeal because briefs were not filed in the trial court nor in this court until September 26, 1913. The record was filed with the clerk of the Court of Civil Appeals of the First district on July 30, 1912, and the case, having been transferred to this court, was set for submission on October 8, 1913, but at the request of counsel for appellee the submission was postponed until October 15th. It appears that a typewritten copy of the brief was delivered by counsel for appellant to counsel for appellee about 11 o'clock a. m. on September 25, 1913, and on the morning of the next day two printed copies were delivered to said counsel for appellee. On Sep-

tember 29th appellee's motion to dismiss the appeal was filed. It is not alleged in the motion that appellee's counsel did not have sufficient time to brief the case after receiving the copy of appellant's brief. The brief covers only a few questions, the most important being questions of fact, and it is apparent that it could have been answered by devoting a few days to the task; in fact, appellee's counsel admitted in argument on the motion that it could be done in 12 hours if everything else was laid aside and attention given solely to the preparation of such reply.

Following the decision of the Supreme Court in the case of S. A. & A. P. Ry. Co. v. Holden, 93 Tex. 211, 54 S. W. 751, our courts have frequently refused to dismiss appeals where the time left appellee was amply sufficient in which to answer appellant's brief. Counsel for appellee, in an argument on the motion filed since the submission was taken, insists that his statement concerning briefing the case in 12 hours should not be made the test as to whether the appeal should be dismissed. Certainly it would be exceedingly unfair to require counsel for appellee to brief a case in the least time in which it could possibly be done, when counsel for appellant has taken over a year's time. When appellant's briefs are not filed within sufficient time, appellee will be given the benefit of every doubt, and it must be evident from the nature of the brief that ample time has been afforded appellee to answer such brief, otherwise the appeal should be dismissed. While appellee had only 12 days in which to answer from the time he received the typewritten copy of the brief, yet, having asked and obtained a postponement of the submission for one week, such additional time should be considered in passing upon this motion, and, it not being alleged in the motion that appellee was injured or that he did not have ample time in which to answer appellant's brief, we overrule the motion to dismiss the appeal.

Before taking up the assignments of error, we will make a brief statement of the facts bearing upon the issues submitted to the jury.

Plaintiff was a car inspector and repairer at Spring station and junction point, at which there were switching yards containing nine side tracks. A train had come in, and the engine crew and switchmen of same were busy "kicking" cars into a number of the side tracks for the purpose of carrying the train forward to Houston with such additional cars as ought to be switched into it. The cars were being "kicked" from a curved lead track into the different side tracks. A number of cars were standing on track No. 1, not more than 200 yards from the lead track, from which the switching was being done, and, as nine cars were "kicked" into track No. 1 to be added to the stationary train, plaintiff mounted the side of one of the cars

to ride down to where the stationary cars were, for the purpose of inspecting the cars which were being added to said train, so that the train could go to Houston. The rules of the company forbade the riding of cars through the yards by car inspectors, but the men frequently rode them for their convenience and to get through their work promptly. Plaintiff rode the cars upon this occasion to save himself a walk of less than 200 yards. At the time plaintiff mounted the cars the engine was not visible to him, being hid by the curve of the cars. There is no evidence that the engineer or fireman, or any other member of the train crew, saw plaintiff mount the cars, and neither the engineer nor fireman knew he had gotten on the side of the cars until after plaintiff was injured. After "kicking" the string of cars into track No. 1, the engine was run back on track No. 2, distant about 10 feet from No 1, for the purpose of going after water and oil. The engineer was looking down the track in the direction he was going, watching for signals from the swing brakeman, W. W. Tucker, who was on the rear of the tender. He could have seen plaintiff on the side of the cars going down track No. 1 had he looked that way, but testified he did not do so on account of having his attention fixed down the track on which he was moving. Plaintiff concluded that the cars he was riding upon had been "kicked" with too much force and, fearing they would collide with such force as to subject him to danger, jumped off and ran diagonally across track No. 2 immediately in front of the engine, with his side toward the engine, and without looking to see whether the engine was coming on that track or not. He did not see the engine until he was on the track and the engine within about two or three feet of him. In fact, he did not know the engine had been detached from the cars he was riding. He heard no whistle or bell and saw the engine only in time to say that he saw it before it struck him. He testified the noise of the engine must have caused him to turn his head. He simply did not expect the engine to be back on that track and therefore did not look for it. He knew that engines were likely to be moved through the yards at any time, sometimes going back for water or oil or for other purposes. He also testified that the practice was to ring the bell when engines were moving to and fro in the yards. The evidence was conflicting as to whether the bell was rung upon this occasion. The rules of the company required the bell to be rung when the engine started but did not require the ringing to be kept up in the yards nor that the whistle be blown.

Plaintiff testified the cars he jumped from were moving at the rate of about six miles an hour, and that the engine must have been going 20 miles an hour when it struck him. He based this estimate on the fact that the engine cut loose from the cars "kicked" into track No. 1 in time to strike him as he was running across track 2. As a matter of fact, plaintiff testified he did not know that the engine ever ran into switch track No. 1, and the testimony of the engineer and the two Tuckers, who were on the tender of the engine at the time plaintiff was injured, shows that the engine slowed down on the lead track, and the cars were "kicked" into track 1, but the engine did not stop at all, as the Tuckers threw the switch for track 2, and the engine without stopping moved into said track; the Tuckers jumping on the engine.

The engineer and the Tuckers testified the engine was moving at the rate of four or five miles an hour. The cars were "kicked" upgrade and in fact did not come in contact with the stationary cars with any undue force. As the engine backed up track 2, the Tuckers were on the tender to keep a lookout; W. W. Tucker being on the same side as the engineer (that is, the side next to the kicked cars), while J. J. Tucker was on the other side, as was the fireman. Both of the Tuckers saw plaintiff hanging on the string of cars and saw him when he got off the cars and started across toward track 2. W. W. Tucker's testimony is not very clear, but, taking it most favorably towards plaintiff, it appears that when about 12 feet distant from plaintiff he saw that plaintiff was going to get on track 2 but did not give the stop signal until within about 5 feet of plaintiff, which was just at the time his brother called to plaintiff. At one place he states that plaintiff was about 5 feet from the engine "at the time he was about to mount the track"; at another place he gives the distance as 12 feet when plaintiff attempted to get on the track, and as 5 feet when he actually was on the track, and that he was about the center of the track when J. J. Tucker called to him and the witness gave the stop signal.

J. J. Tucker testified that the cars on which plaintiff was riding were going at the rate of about three miles an hour; that four or five feet before the engine got to plaintiff he jumped off and ran angling to the north; that as plaintiff entered track 2 witness called to him, "Look out, fellow, what in the hell do you mean?" that plaintiff was about four or five feet from the engine; that he glanced around and started to jump, at which time the engine hit him. He testified that he did not know plaintiff was going to enter track 2 until he did so, and that he immediately hallooed to him, and W. W. Tucker gave a violent stop signal, which was obeyed; the engine going about an engine's length before it stopped, which was about 62 feet.

Plaintiff testified he was running across the track as fast as he could when he was struck. W. W. Tucker said plaintiff was moving at a speed just out of a walk, what he would call a trot.

Of the cars to be inspected by plaintiff

some were destined to points beyond the state.

[2, 3] By the first assignment of error complaint is made because the court instructed the jury, if they believed the Tuckers saw plaintiff and realized the danger to which he was being exposed of being struck by the engine, then it was their duty to use all reasonable means at their command that persons of ordinary prudence would have used, under the circumstances, to prevent injury to plaintiff; and if the jury believed they failed to use such means, and that such failure was the proximate cause of the injury to plaintiff, then to return a verdict for plaintiff. The contention is that there is no evidence to support the submission of said issue. In view of W. W. Tucker's testimony, we think the evidence justified the submission of the issue. If he saw plaintiff about to enter track 2 while the engine was 12 feet distant from plaintiff, then his brother also saw him under the same circumstances, and the jury could find that they should have at once called to plaintiff and given a stop signal instead of waiting until he had stepped on the track. From the evidence it appears that a heavy engine cannot be stopped in less distance than that testified to in this case, namely, about 62 feet, so it is not made to appear that a stop signal alone would have availed anything; but, as the engine was going slowly, the extra distance might have been of much avail if plaintiff had been warned by the Tuckers as he was about to step on the track. In considering this matter we of course must view the evidence most favorably to appellee and must necessarily discard the testimony of J. J. Tucker as to the position of plaintiff when he called to him and accept that of W. W. Tucker as to the distance from the engine when he first saw that plaintiff was about to step upon the track. It follows that, if J. J. Tucker saw plaintiff all the time, he also saw him about to step on the track when 12 feet distant from the engine, and it was for the jury to say, in view of all the circumstances, whether said J. J. Tucker and W. W. Tucker exercised ordinary care to use all the means in their power to prevent the injury, and, if they did not exercise such care, whether by exercising the same they could have averted the injury. We overrule the assignment.

[4, 5] By assignment No. 2 another complaint is made of the charge; the portion objected to being copied in the assignment and being very long. After requiring the finding of various matters, descriptive of how plaintiff came to be injured, as alleged by him, the court added the following: "And you believe 'kicking' the cars into the siding at the rate of speed at which they were 'kicked' would have caused a person of ordinary prudence, situated as plaintiff was, to jump from the car for fear of injury and to run across said track, under the circumstances he claims he did, and believe that those in charge of the engine knew of plaintiff's position on the car, and of his probable ignorance of the approach of the engine, if he was ignorant thereof, or in the exercise of ordinary care would have known thereof and would, in the exercise of such care, have foreseen that plaintiff, under the circumstances, would probably jump from the car and run across the track, and in so doing would be exposed to the danger of being struck by the engine, and believe that those in charge of the engine, in the exercise of ordinary care, should and could have rung the bell or blown the whistle or given other warning to plaintiff of the approach of the engine, and that, had either been done, he would have been advised of the approach thereof and avoided contact therewith, and you believe they failed to do either to warn him, and believe such failure, if any, was negligence, and that such negligence was the proximate cause of the injury of plaintiff, you will return a verdict for plaintiff; but, unless you so find, you will return a verdict for defendant." The objection made to this charge is that it submits various matters concerning which there is no evidence, and that the issue whether failure to blow the whistle or ring the bell was the proximate cause is made dependent upon contingencies of an uncertain character dependent upon actions of plaintiff not to be anticipated or foreseen. There is no evidence that the persons in charge of the engine, viz., the engineer and fireman, who were the only persons who could give signals by means of whistle or bell, knew that plaintiff was riding the cars until after he was injured; nor is there any evidence that they knew he was probably ignorant of the approach of the engine, nor that they could or would, in the exercise of ordinary care, have foreseen that plaintiff would jump from the cars which in fact did not collide violently with the stationary ones, nor that, if he did jump off, he would run across track 2 instead of staying between the two tracks. If it should be contended that the Tuckers were partially in charge of the engine and saw plaintiff on the cars, then the fact remains that they could not reasonably anticipate that plaintiff would become apprehensive without cause and jump from the cars, and that he was ignorant of the approach of the engine and would run across right in front of the same instead of staying between the two tracks. An injury which could not have been foreseen or reasonably anticipated as the natural and probable result of a negligent act is not proximately caused by such act. At the time when the appellee claims the employés of appellant should have given warning by ringing the bell or blowing the whistle, there were no facts or circumstances known to them which would cause them

to reasonably anticipate that the failure to ring the bell or blow the whistle would cause injury to appellee or any one else. Under the facts they could not anticipate injury to appellee as probable until it became apparent that he was verging upon track 2 in a manner indicating that he did not know of the existence of the engine on said track. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Kreigh v. Westinghouse C. K. & Co., 152 Fed. 120, 81 C. C. A. 338, 11 L. R. A. (N. S.) 684; Railway v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661; Pullman Co. v. Caviness, 53 Tex. Civ. App. 540, 116 S. W. 412; Railway v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582; Railway v. Welch, 100 Tex. 118, 94 S. W. 333. We sustain the assignment.

The third assignment relates to the sufficiency of the evidence, while the fifth complains of the verdict as excessive. In view of another trial, we will not go into the matters raised by these assignments.

There is no merit in the fourth assignment of error complaining of the charge on contributory negligence under the federal Employers' Liability Act of 1908, and the same is overruled.

[6] Assignment No. 6 is overruled. The court did not err in refusing to give the charge on assumed risk. In view of the fact that the issue of discovered peril was in the case, it would have been improper to have given the charge in question, which applied to the whole case. When plaintiff seeks a recovery upon the issue of discovered peril as well as upon other theories, charges on contributory negligence and assumed risk should be limited to be considered only upon the other theories, as such defenses cannot be urged to defeat liability arising by reason of discovered peril. Railway v. Finn (Civ. App.) 107 S. W. 94; s. c., 101 Tex. 511, 109 S. W. 918; Kelley v. Railway, 101 S. W. 1166; Railway v. Scarborough, 104 S. W. 408.

The judgment is reversed, and the cause remanded.

On Motion for Rehearing.

MOURSUND, J. [7] We have carefully considered appellee's motion for rehearing and conclude that the evidence is sufficient for the jury to find that the engineer, notwithstanding his denial, did see appellee on the side of the car. However, we are still of the opinion that the evidence did not justify the submission of the issue whether those in charge of the engine should have given signals by bell or whistle. There were no facts charging them with notice that appellee did not know the engine was on the other track, nor that appellee would probably jump from the cars, and, if so, that he would run across in front of the engine instead of remaining between the tracks.

The motion is overruled.