## MISSOURI, K. & T. R. CO. v. JORDAN.
### (No. 7854.)

Court of Civil Appeals of Texas. San Antonio.
Dec. 23, 1927.

Rehearing Denied Feb. 1, 1928.

1. Appeal and error ⚖══387(1)—Clerk's failure to place file mark on appeal bond does not deprive appellant of right of appeal "filed" (Rev. St. 1925, art. 2253).

Appeal bond is "filed" with clerk under Rev. St. 1925, art. 2253, on its being placed in hands of clerk for approval and filing, and failure of clerk to perform act of placing file mark on bond until after time for filing bond had expired did not deprive appellant of right of appeal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, File.]

---

**2. Appeal and error ⟨⟩628(3)—Failure to file transcript in time may be waived.**

Failure to file transcript in time may be waived by appellee or defendant in error, because error is one that merely defeats jurisdiction in the particular case.

**3. Appeal and error ⟨⟩628(3)—Failure to file transcript in time held waived by not assailing filing of transcript until 10 months after it had been filed (Courts of Civil Appeals rules 8, 9).**

Failure to move to dismiss appeal because transcript was filed too late, until 10 months after transcript had been filed, *held* a waiver under Courts of Civil Appeals rules 8, 9.

**4. Appeal and error ⟨⟩770(1)—Appellee waived right to object to failure to timely file briefs by filing brief showing no material injury (Courts of Civil Appeals rules 38, 39).**

Appellee waived right to object to failure to file briefs as required by Courts of Civil Appeals rules 38, 39, by filing elaborate brief clearly indicating that it has suffered no material injury by such failure.

**5. Courts ⟨⟩97(5) Decisions of federal courts construing Federal Employers' Liability Act control if conflicting with state courts (45 USCA §§ 51–59).**

In case of conflict between federal courts and state courts in construction of Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), decisions of federal courts control.

**6. Death ⟨⟩18(3)—Dependency on deceased is condition precedent to recovery for death under Federal Employers' Liability Act (45 USCA §§ 51–59).**

Dependency on deceased person is an absolute condition precedent to recovery under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), for death of deceased, and if necessary to be proved, it is necessary to allege dependence at least for every one who is not dependent by reason of minority.

**7. Death ⟨⟩52—Allegation that child of deceased employee within Federal Employers' Liability Act was "afflicted boy" held insufficient for issue of dependency after majority (45 USCA §§ 51–59).**

In action under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), for death of employee, allegation in petition that one of children was "an afflicted boy," without disclosing nature of affliction, *held* insufficient basis for submission of question of dependency of such child after reaching majority and of verdict finding such dependency.

**8. Trial ⟨⟩191(10)—Instruction assuming existence of negligence was improper, where question of negligence was vigorously contested (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

Where, in action under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), for death of employee, question of negligence was vigorously contested, instruction assuming existence of negligence was improper.

**9. Master and servant ⟨⟩296(1)—Where employee's death occurred after injury, refusal to submit requested concrete theory as to his intervening negligence causing death held error (Federal Employers' Liability Act [45 USCA §§ 51–59]).**

In action under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), for death of employee, where deceased died of pneumonia about six weeks after injury, refusal to submit defendant's concrete theory supported by facts that death resulted from intervening negligent acts of deceased in failing to take proper precautions and obtain medical attention *held* error.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by Clyde Jordan, administrator, against the Missouri, Kansas & Texas Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Charles C. Huff, of Dallas, Bruce M. McMahan, of Greenville, A. H. McKnight, of Dallas, and Jones & Jones, of Mineola, for appellant.

Edwards & Hughes, of Tyler, and Bozeman & Cathey, of Quitman, for appellee.

FLY, C. J. This suit was instituted for the benefit of the widow and children of Charles Arnold, deceased, by the administrator of his estate, against appellant, to recover damages accruing from the death of Charles Arnold through the alleged negligence of appellant. The suit was instituted under the Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665), and that accounts for the suit being brought by the administrator, as the federal statutes require, for some unknown reason, that the suit is to be brought by a representative of the estate. This requirement merely entails the expense of administration when the suit could be brought as under the state statute (Rev. St. 1925, arts. 8306–8309), by the mother, in this instance. A trial by jury resulted in a verdict and judgment in the sum of $10,000, which was apportioned, $2,400 to Leonard Arnold, $2,000 to Lennie Arnold, $2,400 to Travis Arnold, and $2,800 to Bobbie Arnold, a posthumous child, and $400 for physical and mental suffering not apportioned.

[1] We will first dispose of the claim of appellee that the cause be dismissed because the appeal bond was not filed in the district court within the time prescribed by law. The motion for a new trial was overruled on November 20, 1926, and on the same date appellant gave notice of appeal. The court adjourned on that day. According to the file mark of the district clerk of Wood county,

the appeal bond was filed on December 17, 1926, and consequently if that file mark speaks the truth the bond was filed more than 20 days after expiration of the term of court on November 20. However, an affidavit of the district clerk has been filed in this court, which states that the bond was sent to him by mail and that he approved it on December 7, 1926, and his approval of the bond was entered on it on December 7, 1926. It was after its approval by the clerk placed by him in the hands of his deputy for filing, and the deputy did not place the file mark on it until December 17, 1926. The law is that the appeal bond shall be "filed with the clerk," and appellant had performed its duty when the bond was "filed with the clerk" within the legal period of time, and it cannot be deprived of the right of appeal by a failure of the clerk to perform the clerical act of placing his file mark on the bond as soon as he approved it, on December 7, 1926. The bond was filed by appellant when it was placed in the hands of the clerk for approval and filing. Rev. Stats. 1925, art. 2253. We overrule the motion to dismiss on the ground that the appeal bond was not filed with the clerk within the time permitted by law.

[2, 3] It is also the contention of appellee that the appeal should be dismissed, because if the time in which a transcript can be filed is computed from a filing of the bond on December 7, then it was filed too late, having been filed on March 15, 1927, which is 98 days after the bond was approved and filed. It has been made known to the court that appellant seeing the date of the filing of the appeal bond as of December 17, 1926, was misled thereby and calculated time for filing the transcript from that date, and March 15 came within the 90 days allowed for filing the transcript. As hereinbefore stated, the record was filed in this case on March 15, 1927, and we find no attempt made to dismiss the appeal on the ground of the record being filed out of time in the appellate court until the filing of the briefs by appellee, on December 9, 1927, nearly ten months after the transcript was filed. The failure to file the transcript in time may be waived by the appellee or defendant in error, because the error is one that merely defeats the jurisdiction in this particular case. The failure to assail the filing of the transcript out of time for ten months after it had been filed was a waiver of such defect in the filing. It is true that such motion may be entertained by an appellate court, though not made within 30 days after the transcript was filed, but in this case we conclude there is no justice or equity in the attempt to dismiss and overrule the application to dismiss. Rules 8 and 9 for Courts of Civil Appeals.

[4] The briefs of appellant were filed in the district court on November 24, 1927, and on the following day in the appellate court. Appellee waived all right to object to the failure to file the briefs as required by law, and rules 38 and 39, by filing an elaborate brief in this court clearly indicating that appellee has not suffered any material injury in his cause in the appellate court by a failure of appellant to file its briefs in the prescribed time. San Antonio & A. P. Railway v. Holden, 93 Tex. 211, 54 S. W. 751; Ward v. Compton (Tex. Civ. App.) 203 S. W. 129; International Railroad Co. v. Walters (Tex. Civ. App.) 161 S. W. 916; Texas & P. Railway v. Connor, 111 Tex. 99, 229 S. W. 844; Texas & Pac. Railway v. Cave, 112 Tex. 437, 248 S. W. 23. Having considered, discussed, and overruled the contentions of appellee in regard to the transcript and briefs, we will proceed with the propositions under the assignments of error presented by appellant.

The transcript consists of 265 pages of typewritten matter, made up of about 40 pages of special charges requested by appellant and over 100 pages devoted to its bills of exception and 45 pages to an amended motion for new trial. The transcript is unnecessarily voluminous and serves no purpose except to increase the labors of an appellate court. The briefs of the parties, in bulk and prolixity, are like unto the record, which, together with a statement of facts of some 273 pages of typewriting, render the proper consideration of the case both tedious and arduous.

The first and second propositions assail the charge of the court for presenting to the jury the question of pecuniary benefits that might have been received by Leonard Arnold from his father, not only before but after he had reached his majority, on the ground that there were no allegations in the petition that formed a sufficient basis for the presentation. The petition, after alleging that the deceased was a healthy, vigorous man about 35 years of age, earning $75 or $100 a month, stated that he left surviving him his wife, now deceased, and "their four minor children, Leonard Arnold, an afflicted boy; Lennie Arnold, a young girl child; Travis Arnold, a young boy child; and Bobbie Arnold, an infant girl," and they "were dependent solely upon their father, the deceased, for the necessities, comforts, advantages, and pleasures of life, and all of these they have lost by reason of his death." The affliction of the boy, Leonard, was not mentioned except as indicated, as "an afflicted boy," in no wise disclosing the nature of his affliction. He may have been afflicted with a stammering, with weak vision, with a clubfoot, or anything within the range of defects or chronic diseases. He was "afflicted," a term so general as to cover a vast field of trouble. No special exception was urged to that part of the petition, but a general demurrer was presented and overruled

by the court, and the question is presented as to whether that part of the petition which sought to state the damages was sufficient to justify a charge permitting the jury to assess damages to Leonard Arnold after reaching maturity, on account of his affliction. At the time his father died Leonard was 16 or 17 years of age, being within 4 or 5 years of his majority. The court limited the time for which Lennie, Travis, and Bobbie Arnold might recover damages to their minority, but charged the jury "in estimating the pecuniary benefits, if any, which Leonard Arnold would have received from his father, if he had not died, you may consider such pecuniary benefits, if any, as the evidence may show that he would have received from his father (if he had not died) until Leonard Arnold reached his majority and also such benefits, if any, which the evidence may show that he would have received from his father (if he had not died) after becoming 21 years of age." The other children were, respectively, 7 and 5 and a posthumous girl. The jury awarded to Leonard, the "afflicted boy," $2,400, to a 7 year old girl, $2,000, to the 5 year old boy, $2,400, and to a baby girl $2,800. Leonard was shown to be a hunchback, his affliction resulting, as stated by Leonard and his stepmother, from an attack of spinal meningitis, when he was 8 or 9 years of age. It is clear that the verdict was influenced by the charge of the court, because the boy 16 or 17 years of age received more than the girl 7 years of age, and as much as the boy 5 years of age. The girl had a minority of 14 years before her, and the 5 year old boy had a minority of 16 years in expectancy at the time of their father's death and Leonard had at the most only five years more of minority.

[5] Deceased, Charles Arnold, received the injury to his back while working for the railroad company, which it is claimed caused traumatic pneumonia from which he died, and the circumstances caused the suit which arose from his death to be a case arising under the Federal Liability Act, as construed by federal courts, and the decisions of the Supreme Court would have a controlling influence on the issues in the case should there be any conflict between them and those of the state courts.

[6, 7] The Federal Act (45 USCA § 51) provides that in case of the death of an employee from an injury sustained while he was engaged in interstate commerce the railroad company shall be liable to his personal representative for the benefit of his widow and children, if any; if none, then for his parents; if none, then for his next of kin dependent upon him. The Supreme Court of the United States has construed the words "dependent upon him" to refer not to the "next of kin" alone. Gulf, C. & S. F. Railway v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57

L. Ed. 785. By reason of that decision Sutherland, in his work on "Damages," § 1332, paraphrases the law as follows:

"The railroad company shall be liable to his personal representative for the benefit of his widow and children dependent upon him, if any, if none, then for his parents dependent upon him, if none, then for his next of kin dependent upon him."

The law of compensation as thus defined, in regard to death cases, rests upon the dependency of the beneficiaries upon the deceased who lost his life in the service of a railroad company. Without dependency there can be no recovery under the federal act, and it would logically follow that in order to show the dependency of an adult son or daughter it must be both pleaded and proved that such adult son or daughter was by reason of mental or physical defects dependent upon the bounties of the deceased parent, or for some other reason was not self-supporting, but dependent upon the deceased parent. An adult child who is dependent upon the labor or the bounty of the parent for his support is an exception to the rule that only minors by virtue of their relationship will be presumed to be dependent upon the parents for their support. As said in the case of American R. Co. v. Didricksen, 227 U. S. 145, 33 S. Ct. 224, 57 L. Ed. 456:

"The cause of action which was created in behalf of the injured employee did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained."

The law will not presume any injury under our state law to any except the widow and minor children, and if an adult child seeks compensation for the death of the father he must fully allege the circumstances entitling him to such compensation and then prove such allegations as to his expectancy of benefits from the deceased. As said in Gulf, C. & S. F. Railway Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785:

"The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss."

The last decision cited was rendered reversing the decision in the case by a Court of Civil Appeals of Texas, 147 S. W. 1188, in which that court held that the federal statute "expressly authorized the suit to be brought by the personal representative, for the bene-

fit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance." It was held in McGarvey v. McGarvey, 163 Ky. 242, 173 S. W. 765, that the period of dependency of a minor child, under ordinary circumstances, ends upon the attainment of his majority, hence mere expectation founded upon the expressed wishes of the father to give him an education, which would necessarily continue for a considerable period after he became of age, cannot form the basis of a claim of pecuniary loss as to the time following his attainment of majority.

All the cited opinions and others made under the federal act concur in holding that dependency on the deceased person is an absolute condition precedent to a recovery, and if necessary to be proved, under an elementary rule that allegata and probata must correspond, it is necessary to allege dependence at least for every one who is not dependent by reason of minority. The facts and circumstances relied upon to place an adult in the dependent class must be fully pleaded in order to admit proof of such dependency. The descriptive allegation of Leonard Arnold as "an afflicted boy" does not meet the requirement and does not form a basis for evidence that would sustain a charge submitting such dependency nor a verdict finding such dependency. The evidence in this case under the insufficient pleading was not satisfactory as to the inability of Leonard to earn a livelihood, but rather indicated that he could perform different kinds of manual labor, such as cutting and sawing wood and gathering corn. There were no averments in the petition that support proof of inability to earn a living by Leonard, and the evidence fails to show that fact. We sustain the first and second propositions.

[8] The third and fourth propositions complain of the instruction of the court given in connection with the tenth special issue, which was on the subject of the amount of compensation to be allowed by the jury. The instruction assumes that if deceased was injured by being struck by the car, that his widow and children were entitled to recover regardless of whether deceased was injured through the negligence of appellant. The existence of negligence, when not a matter of law, should not be assumed by a court in instructions to a jury. The question of negligence was one that was vigorously contested by appellant, and its existence should not have been assumed in any part of the charge.

[9] Charles Arnold was struck by a car of appellant being propelled against him on December 16, 1924, and there was evidence tending to show that a small bump or protuberance on his back was caused by the blow. He, however, continued to labor at times until he took to his bed on January 22, 1925, and on February 2, 1925, died of pneumonia. The question of the liability of appellant hinged on connecting the pneumonia with the blow inflicted on deceased by appellant's car, at least a month and a half before the death of deceased. Negligence in striking deceased and the direct connection between the injury and the pneumonia that caused the death of Charles Arnold were the basic issues in the case. Appellee contended that injury received by deceased was the direct and proximate cause of his death, while the contention of appellant was that there was no causal connection between the injury and the disease, but that the death occurred from an ordinary case of pneumonia taken by the deceased at a time when pneumonia and influenza were prevalent and to both of which diseases deceased had been exposed. A number of doctors testified in the case and differed as to whether the pneumonia had any connection with the injury received by deceased. The only special issue on the subject submitted by the court is:

"Was the injury, if any, received by Charlie Arnold on the occasion in question, a proximate cause of his death?"

Appellant requested the court to present the issue:

"Did the pneumonia from which Charlie Arnold died result from another cause than the alleged injury, if any, occurring, if it did occur on December 16, 1924?"

The court also charged the jury:

"Was Charlie Arnold guilty of contributory negligence in anything that he did or omitted to do after receiving said injury, if any, relative to the care, if any, he exercised to recover from said injury, if any, and avoid aggravating same?"

As explanatory of the question the court charged:

"To aid you in answering question No. 8, I instruct you that it was Charlie Arnold's duty after receiving said injury, if any, to exercise ordinary care to avoid any aggravation of the same and to recover from it. If he failed to exercise such care for that purpose he would be guilty of contributory negligence. Otherwise he would not be guilty of such contributory negligence."

Appellant sought to present with such issues herein copied its concrete theory supported by some evidence as to the cause of the death, as follows:

"In connection with special issues Nos. 3 and 8, you are instructed that if you believe from the evidence that the deceased was struck by one of defendant's cars, and you further believe from the evidence that he was injured by reason thereof, but that such injury was only slight and that by proper precautions and care of himself and by promptly obtaining medical attention and treatment he would have recovered from the effects thereof, and you further believe from that

by exposure and neglect said injury was aggravated and made worse and finally resulted in the attack of pneumonia from which he died, then the original injury would not be the proximate cause of the death of Charlie Arnold."

There are facts that tended to support appellant's theory of the case, which it sought to present in the special instructions requested, and the theory of the case on which it based its defense should have been presented to the jury. A pioneer case on this subject is that of Missouri, K. & T. Railway v. McGlamory, 89 Tex. 635, 35 S. W. 1058, which went from this court to the Supreme Court by writ of error. The court held that:

The "correct rule is that defendants had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of any specified group of facts which if true would in law establish such plea, and instructing them that if they found such group of facts to be established by the evidence, to find for defendants."

In that case as in this it was contended that the injuries would not have culminated in death but for the negligent acts of the deceased; in that case as in this the court had presented the question of contributory negligence; and in that case, as in this, the defendant sought to have the law applied to its group of facts upon which it rested its defense. The soundness of the decision has never been questioned, and it has been often cited. In the case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, the McGlamory Case is quoted from with approval, and the Supreme Court added:

"The right of a party plaintiff or defendant to have all fact issues submitted to, and determined by, a jury, which he has plead and proven, depends in no wise on whether judgment is to be entered on a special or general verdict. The language of the statute is too plain to admit of doubt on this point. Hence, the cases settling the rule where general charges are given settle it where special issues are submitted."

A number of cases holding to the rule laid down in the McGlamory Case are cited by the Supreme Court. The time between the injury and death was quite long; deceased had been at work a number of days after the injury; he had not sought the advice and aid of a physician and had assisted in nursing cases of pneumonia, which was prevalent at the time he contracted the disease, and the proximate cause of the development of pneumonia must depend on the opinions of medical experts, who differ very radically with each other, give the impression of an excursion into the realm of speculation and doubt; all of these facts presenting themselves, the case is one peculiarly within the rule in the McGlamory Case.

We overrule the seventh proposition, which assails the sufficiency of the evidence to sustain the verdict that the injury inflicted by the car was the proximate cause of the death by pneumonia. There were facts, however unsatisfactory they may be to a court, which might sustain the verdict.

The judgment is reversed and the cause remanded.